

```
                                        ┌─────────────────────────────┐
                                        │          FILED              │
                                        │                             │
                                        │        SEP 20 2011          │
                                        │                             │
                                        │ UNITED STATES BANKRUPTCY COURT│
                                        │  EASTERN DISTRICT OF CALIFORNIA│
                                        └─────────────────────────────┘
```

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                              )    Case No. 10-19988-B-13
                                   )
Ronnie Germaine Wiley and          )    DC No. MHM-1
Alicia Lee Wiley,                  )
                                   )
            Debtors.               )
_____)

**MEMORANDUM DECISION REGARDING TRUSTEE'S
OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no
precedential value. See 9th Cir. BAP Rule 8013-1.

Deanna K. Hazelton, Esq., appeared on behalf of the chapter 13 trustee, Michael H.
Meyer, Esq.

Robert S. Williams, Esq., appeared on behalf of the debtors, Ronnie Germain Wiley
and Alicia Lee Wiley.

Before the court is an objection (the "Objection") by the chapter 13 trustee,

Michael H. Meyer, Esq. (the "Trustee"), to confirmation of the chapter 13 plan (the

"Plan") filed by Ronnie and Alicia Wiley (the "Debtors"). The parties waived the

right to an evidentiary hearing and agreed to submit the matter after the filing of

supplemental briefs.



1    The Trustee contends that the Plan fails to satisfy the "disposable income"

2    test under 11 U.S.C. § 1325(b)(1)(B)[1] because the Debtors claimed deductions on

3    Form 22C (the "Means Test") which exceed the amounts allowed for "non-

4    mortgage housing expenses" in the National and Local Standards published by the

5    Internal Revenue Service (the "IRS Standards"). Specifically, the Debtors deducted

6    additional expenses which reflect the amounts they actually pay monthly for pool

7    maintenance, yard care, and the family's cellular telephones. The Debtors contend

8    that these additional expenses should be allowed as "special circumstances." For

9    the reasons set forth below, the Trustee's Objection to confirmation of the Plan will

10   be sustained.

11        This memorandum contains the court's findings of fact and conclusions of

12   law required by Federal Rule of Civil Procedure 52(a), made applicable to this

13   contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy

14   court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C.

15   § 1325 and General Orders 182 and 330 of the U.S. District Court for the Eastern

16   District of California. This is a core proceeding as defined in 28 U.S.C.

17   §157(b)(2)(A) & (L).

18   **Background and Findings of Fact.**

19        The Debtors' petition was filed on August 28, 2010. With the petition, they

20   filed their Plan together with all required documents and schedules. The Debtors'

21   annualized current income, stated on the Means Test to be $153,403.32 ($12,783.61

22   per month) is above the median income for their household size. From their

23   income, the Debtors have deducted monthly expenses totaling $12,824.46. The

24

25   _____

26        [1]Unless otherwise indicated, all bankruptcy, chapter, code section and rule references
     are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy
27   Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the
     effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
28   Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

2

1    resulting "monthly disposable income" on line 59 of the Means Test is *negative*
2    $40.85.

3        The Debtors' Plan provides for monthly payments to the Trustee in the
4    amount of $4,000 for 60 months, which will include their post-petition mortgage
5    payment. The Plan provides that the unsecured creditors with claims in the
6    estimated amount of $91,437.85 will receive a 23% distribution, or approximately
7    $21,030 over the life of the Plan. On line 25A of the Means Test, the Debtors
8    deducted $504 for "housing and utilities; non-mortgage expense." This is the "no-
9    look" deduction allowed for the Debtors' family based on the IRS Standards. On
10   line 57 of the Means Test, the Debtors claimed an additional "special
11   circumstances" deduction described as "non-mortgage housing expense over
12   average" in the amount of $325.19.[2]

13       Altogether, the Debtors have claimed, on lines 25A and 57, non-mortgage
14   housing expenses totaling $829.19. Based on the Trustee's Statement of Disputed
15   Issues, the Debtor's actual expenses in this category breakdown generally as
16   follows:

17 | | |
| --- | --- |
| Electricity: | $189.00 |
| Water: | $ 55.00 |
18 | Cell Phones: | $278.00 |
| Land Line: | $ 47.00 |
19 | Lawn Service: | $175.00 |
| Pool Service: | $120.00 |

20

21       The Trustee contends that the Debtors' "non-mortgage housing expense"
22   deductions are too high. Specifically, the Trustee objects to the deductions for
23   swimming pool service ($120 per month), lawn service ($175 per month), and

24   _____

25       [2]The Trustee initially objected to two additional "special circumstances" deductions
claimed on line 57, a $449.50 deduction described as "Rental home - being surrendered" and
26   a $450 deduction described as " Support of son not in home." The total deductions
originally claimed on Line 57 totaled $1,224.69. In his Statement of Disputed Issues, the
27   Trustee indicates that the two latter deductions have been explained. The only remaining
28   issue relates to the "non-mortgage expenses" discussed herein.

3

cellular telephone service ($278 per month)[3] (collectively, the "Additional Expenses").  In response, the Debtors filed two declarations which try to explain the Additional Expenses and attempt to justify their consideration as "special circumstances."  With regard to the lawn care expense, the Debtors argue that lawn care is "inherently dangerous, somewhat physically demanding and has its own inherent costs, such as purchasing a lawnmower, maintaining the lawnmower and disposing of the grass clippings. . . ."[4]  With regard to the swimming pool service, the Debtors contend, in essence, that they do not know how to take care of a swimming pool.  In their first responsive declaration, the Debtors explained that the need for swimming pool and lawn service is based on their personal work schedules and the desire for more "family time":

> We believe the costs of our lawn service . . . and pool service . . . are reasonable and necessary because we both work full-time and do not have the time during the week to maintain them ourselves. . . . [I]t is very important for us to spend time together enjoying our family on the weekends.[5]

Finally, with regard to the cellular telephone service, the Debtors also attempt to explain that each of their children, ages 7, 14 and 17 must have a cellular telephone for safety and security purposes:

> We have 5 cell phones on a shared family allowance plan with all lines sharing 1500 minutes of usage and 1 line with unlimited internet access.  The time spent on the phones must be adequate for sharing.  We consider it absolutely necessary to be able to keep in contact with our children and family.  Both of us work out of town, approximately an hour away in two different directions.  Our children attend different schools and do not arrive home at the same times. [sic]  Both our older children walk home from school and attend sports, and our

---

[3]The Debtors also have "land line" telephone service in their home at a cost of $47 per month, internet service at a cost of $25 per month and cable television at a cost of $68 per month.

[4]Debtors' Statement in Response To Trustee's Statement of Disputed Issues, 2:5-7, Dec. 29, 2010.

[5]Debtors' Decl. 2:3-9, Oct. 11, 2010.

4

youngest child walks three blocks to daycare from the school
bus stop. They have cell phones primarily as a way to ensure
their safety. . . .[6]

In conclusion, the Debtors summarize their argument that the Additional
Expenses are justified as a "function of the socioeconomic level of the debtors, time
available and the physical capabilities of the debtors."[7]

**Issues Presented.**

The singular issue presented here is whether the Debtors may deduct, as
"special circumstances," on line 57 of the Means Test, the actual expenses they
incur in excess of the "no-look" non-mortgage housing expense already allowed by
the IRS Standards.

**Applicable Law.**

The analysis begins with Bankruptcy Code § 1325(b)(1)(B). A chapter 13
plan may not be confirmed over the objection of an unsecured creditor, or the
chapter 13 trustee, unless it provides for payment of the debtor's "projected
disposable income" to the allowed claims of unsecured creditors. The term
"projected disposable income" is a number that is calculated through the Means Test
based on the debtor's income and various allowed deductions. The Means Test
determines, *inter alia*, which statutes will govern the calculation of "disposable
income," how much the debtors must pay to their unsecured creditors, and how long
the debtors' chapter 13 plan must provide for those payments.

The Means Test was created as part of the Bankruptcy Abuse Prevention and
Consumer Protection Act ("BAPCPA"), which Congress enacted "to correct
perceived abuses of the bankruptcy system" and to "help ensure that debtors who

---

[6]Debtor's Decl. in Response to Trustee's Statement of Disputed Issues Re Objection
to Confirmation of Debtors' Chapter 13 Plan, 1:19-28, Dec. 29, 2010.

[7]Debtors' Statement in Response to Trustee's Statement of Disputed Issues Re
Objection to Confirmation of Debtors' Chapter 13 Plan, 2:13-21, Dec. 29, 2010.

5

can pay creditors *do* pay them." *Ransom v. FIA Card Services, N.A. (In re Ransom)*, 131 S.Ct 716, 721 (2011) (emphasis in original, citations omitted). The Means Test was designed by Congress "to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" *Id.* at 725.

Here, the Means Test shows that the Debtors' monthly income exceeds the State of California's median income which makes the Debtors "above median income." From the current monthly income, the Debtors may deduct "amounts reasonably necessary for the maintenance or support of the debtor or a dependent." § 1325(b)(2)(A)(i). For "above median income" debtors, the term "amounts reasonably necessary for maintenance or support" is determined with specific reference to § 707(b)(2), subparagraphs (A) and (B). § 1325(b)(3). Section 707(b)(2)(A) allows a debtor to claim living expenses based, *inter alia*, on the IRS Standards.

In addition to expenses allowed by the IRS Standards, a debtor may also be able to deduct expenses which can be categorized as "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces." § 707(b)(2)(B)(i). The debtor has the burden of proof to establish the "special circumstances" through an analysis involving a four-part inquiry. To justify an additional expense or adjustment to current monthly income, the debtor must (1) demonstrate that there is no reasonable alternative for the additional expense (§ 707(b)(2)(B)(i)), (2) itemize the additional expense (§ 707(b)(2)(B)(ii)), (3) provide documentation for the expense (§ 707(b)(2)(B)(ii)(I)), and (4) provide a detailed explanation of the special circumstances that make the expense necessary and reasonable (§ 707(b)(2)(B)(ii)(II)).[8] The debtor must attest under oath as to the

---

[8]The Trustee does not contend in this Objection that the Debtors' Additional Expenses were not adequately itemized or documented, even though none of the supporting documents appear in the record. This Objection is based solely on the first and fourth "special circumstances" factors identified above.

6

accuracy of the information offered to demonstrate that the "special circumstance" expenses or adjustments to income are required (§ 707(b)(2)(B)(iii)).

For purposes of the Means Test, Congress did not provide an exhaustive list of "special circumstances," but it did give examples of situations which the court should consider as qualifying. It has been noted, that the examples given by Congress (a serious medical condition or a call to active duty in the Armed Forces) "both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control." *Egebjerg v. United States Trustee (In re Egebjerg)*, 574 F.3d 1045, 1053 (9th Cir. 2009) (citation omitted).

**Analysis.**

### **The Additional Expenses Do Not Qualify as "Special Circumstances"**

The Debtors contend in their supporting declarations that the pool and lawn service expenses are reasonable and necessary because lawn care is "inherently dangerous," the Debtors do not own a lawnmower, and they do not know how to take care of a swimming pool. The Debtors also contend that their work and family schedules do not afford them any time to mow the lawn and take care of the swimming pool. The problem here lies in the fact that the IRS Standards already allow a "no-look" deduction, on line 25A of the Means Test for "utilities and non-mortgage expenses." Presumably, the IRS Standard deduction already makes some allowance for yard care and swimming pool maintenance where applicable. The Debtors already took this full deduction. With some exceptions not applicable here, the Bankruptcy Code does not allow the deduction of actual expenses, in excess of those already allowed by the IRS Standards, simply because the debtors actually spend that amount of money. Indeed, the Bankruptcy Code specifically states that certain deductions for "above-median income" debtors *shall be* the debtor's applicable monthly expense amounts specified under the [IRS] Standards . . . in

7

effect on the date of the order for relief." § 707(b)(2)(A)(ii)(I). (Emphasis added.)[9]
Clearly, with the enactment of BAPCPA, Congress intended that debtors who seek
bankruptcy relief, and whose lifestyle may interfere with the ability to fully pay their
creditors, must be prepared to make some adjustments to their lifestyle in a good
faith effort to repay the creditors as much as they can afford. The Debtors are
essentially asking their creditors to fund the cost of the Debtors' comfortable
lifestyle.

The wording of the Bankruptcy Code allows the court some discretion to
allow a "special circumstance" expense when there is a true need for the expense
due to circumstances which are clearly beyond the debtor's control and for which
there is no reasonable alternative. Cases in which the courts have allowed the
deduction of extra expenses usually involve extraordinary situations. Nothing in the
Bankruptcy Code suggests that the court should consider the debtor's
"socioeconomic level" or "available time" in the "special circumstance" analysis.
The fact that the Debtors have a swimming pool and a lawn to care for in Central
California is far from unusual or extraordinary. There is no evidence to suggest that
both of the Debtors, and their teenage children, are physically unable to take care of
their swimming pool or their lawn. They simply do not want to, or else they
consider it to be socially unacceptable that they do so. The fact that the Debtors
must care for their lawn and maintain their swimming pool is not a "circumstance
beyond their control." *Egebjerg*, 574 F.3d at 1053.

The same analysis applies to the Debtors' cellular telephone expense. The
Debtors contend, without any supporting evidence, that all of their children, age 7
and up, must have a cellular telephone for their personal security. However, this

_____

[9]Line 26 of the Means Test provides for consideration of additional "housing and
utilities" expenses to which a debtor may be entitled under the IRS Standards if it can be
shown that the IRS Standards "do not accurately compute the allowance." The Debtors did
not take any deduction on line 26.

8

1  conclusory statement does not establish that a $278 monthly family telephone plan
2  is necessary and reasonable, or that there is no reasonable alternative. Even if the
3  court could consider the "security" issue here, many questions remain unanswered.
4  What are the terms of the family's cell phone plan? Why does the family need
5  1,500 minutes per month solely for security purposes? Is there an available basic
6  lifeline telephone service for the family's security? Do the children have basic
7  service, or do they have "smart phones" with unlimited texting and internet service?
8  Are there no reasonable alternatives and why is the use of five cell phones, in
9  addition to a basic land line, beyond the Debtors' control? While it may be "socially
10  acceptable" for the Debtors' entire family to have full cellular telephone service,
11  that does not mean that their creditors should pay for it. The Debtors have the
12  burden of proof here and they have not done so.

13      Before concluding, it is important to note that the traditional "current
14  monthly income/disposable income" analysis has changed since the U.S. Supreme
15  Court decided *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010). It is now established
16  that the calculation of "projected disposable income" is not necessarily tied to
17  prepetition conditions and the court may take into consideration postpetition
18  changes in the Debtors' income and expenses "that are known or virtually certain at
19  the time of confirmation." *Id.* at 2478. Since the commencement of this case, the
20  Debtors' personal and financial situation may have changed in a way that makes the
21  allowance or disallowance of certain expenses more appropriate or irrelevant.
22  Based on this ruling, the Debtors will need to amend their Means Test to properly
23  calculate their projected disposable income. However, when they return to court to
24  confirm a modified plan, the court anticipates that the Trustee's approval, or
25  rejection, of that modified plan will take into consideration the principals in
26  *Lanning*.

27      The court also notes that the Debtors' proposed Plan already provides for a
28  23% distribution to unsecured creditors, even though the original Means Test shows

9

1  the lack of any disposable income.  The court has not been asked to consider
2  whether its ruling here, disallowing the Additional Expenses, will result in a
3  distribution of greater than 23%.  For that matter, the practical affect of this ruling
4  may be insignificant.  That said, the court leaves open the possibility that the parties
5  may now be able to reach a compromise solution and proceed with confirmation of
6  this Plan, with some adjustments reflected in the confirmation order, and without the
7  need for further litigation.

8  **Conclusion.**

9      Based on the forgoing, the Debtors have failed to satisfy their burden of
10  proof with regard to the calculation of projected disposable income and compliance
11  with § 1325(b)(1)(B).  To the extent that the Debtors are requesting a "special
12  circumstance" deduction of $325.19 on line 57 of the Means Test, representing
13  "non-mortgage housing expenses" in excess of the no-look deduction already
14  allowed and taken under the IRS Standards, that deduction will not be allowed.  The
15  Trustee's Objection to confirmation of the Plan will be sustained.  Confirmation of
16  the Plan will be denied without prejudice to the parties' right to compromise this
17  matter and yet confirm this Plan with the settlement terms reflected in the
18  confirmation order.

19      Dated: September ___20___, 2011

20
21
22  W. Richard Lee
    United States Bankruptcy Judge
23
24
25
26
27
28

10

Ronnie & Alicia Wiley, Case No. 10-19988-B-13/DC No. MHM-1

Ronnie Germaine Wiley
Alicia Lee Wiley
4620 Idlerock Ave.
Bakersfield, CA 93313

Robert S. Williams, Esq.
Attorney at Law
1300 18th St., #B
Bakersfield, CA 93301

Michael H. Meyer, Esq.
Chapter 13 Trustee
P.O. Box 28950
Fresno, CA 93729-8950

Deanna K. Hazelton, Esq.
Attorney at Law
P.O. Box 28950
Fresno, CA 93729-8950

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721